**UNITED BANK ALASKA, Appellant,**

**v.**

**Lewis DISCHNER, Appellee.**

**No. 7556.**

Supreme Court of Alaska.

June 22, 1984.

Kenneth R. Lamb, Lamb & Bowen, Anchorage, for appellant.

Martin A. Farrell, Jr., Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Lewis M. Dischner and Jim Rolle, d/b/a Rent-a-Car, Inc., leased a fleet of thirty-four new cars from United Bank Alaska (UBA) in September, 1976. Dischner and Rolle defaulted on the lease and UBA repossessed the cars in July, 1977.

Without notice to the debtors, UBA leased the cars to Payless Rent-A-Car. The bank received $8,147 for this lease. The bank sold one car to Dischner for $7,248 and received $7,530 for two other cars sold privately and $6,725 for two other cars. A snow plow included in the lease was sold for $500. The twenty-nine remaining cars were sold without notice to Dischner or Rolle to Payless in September, 1977 for $37,498.22. The total amount received for the collateral was thus $67,648.22.

In our previous decision in this case, *Dischner v. United Bank Alaska*, 631 P.2d 107 (Alaska 1981), we held that the trial court's finding that Dischner had actual notice of the date after which the collateral would be sold was clearly erroneous and reversed the superior court's award of a $79,301.05 deficiency judgment. We concluded that the bank had not complied with the notice requirement of the Uniform Commercial Code § 9–504(3) (AS 45.09.-504(c)) which governs the disposition of repossessed collateral. We noted that the bank "may be awarded a deficiency judgment based on the difference between the value of the collateral as found by the court and the outstanding debt" (*Id.* at 110) and remanded to the trial court "for additional findings on the actual value of the collateral" (*Id.* at 111). Explaining this result, we noted:

> Since UBA failed to meet the notice requirements of § 504(c), a rebuttable presumption arises that the actual value of the collateral is equal to the amount of the outstanding debt. *Hoch v. Ellis,* 627 P.2d 1060, 1063 (Alaska 1981). This presumption may be rebutted only by a showing, by clear and convincing evidence, of the fair and reasonable value of the collateral. *Id.* at 1063; *Kobuk Engineering & Contracting Service v. Superior Tank & Construction Co-Alaska, Inc.,* 568 P.2d 1007, 1013–14 (Alaska 1977).
>
> In the present case, the trial court made no finding expressly addressed to the issue of the actual value of the collateral. Therefore it is necessary to remand the case for a determination of this matter by the trial court based upon the record. If the trial court is able to find, by clear and convincing evidence, the fair and reasonable value of the collateral, UBA may be awarded a deficiency judgment based on the difference between the value of the collateral as found by the court and the outstanding debt.

*Id.* at 110.

After remand the matter was reassigned by presiding Judge Moody from Judge Ripley, the trial judge, to Judge Shortell, over objection by the bank. The explanation for the reassignment was that Judge Ripley

had been assigned to "duties other than those of a civil case judge...." Judge Shortell, after ordering additional briefing and reading the transcript of the trial, concluded that,

UBA failed to establish by clear and convincing evidence at trial the fair and reasonable value of the collateral repossessed, as required in order to rebut the presumption that the actual value of the

1. Judge Shortell's reasoning supporting this conclusion was expressed in a written memorandum of decision which stated in part as follows:

Because plaintiff failed to give defendant actual notice of the sale, a rebuttable presumption arises that the actual value of the collateral is equal to the amount of the outstanding debt. *Dischner, supra,* at 7, 8; *Hoch v. Ellis,* 627 P.2d 1060 (Alaska 1981). This presumption may be rebutted by a showing of the fair and reasonable value of the collateral. *Dischner, supra,* at 8; *Hoch, supra,* at 1063.

A number of methods may be used by the secured creditor to prove the value of the collateral: among other things, it may bring forward proof of the condition of the collateral and the usual price of items of like condition; it may also produce evidence of the local economic market at the time of sale. *Hoch, supra,* at 1063, 1064.

The Supreme Court has directed me to examine the trial record to determine whether I can find in it clear and convincing evidence of the fair and reasonable value of the collateral. If I can do so I may award a deficiency judgment to plaintiff based on the difference between the value of the collateral and the outstanding debt. Otherwise, the presumption will prevail, and the actual value of the collateral will be deemed equal to the amount of the outstanding debt.

Initially I note that plaintiff has argued that all findings based on credibility should be resolved in its favor, since Judge Ripley's initial decision decided credibility issues in its favor. This proposition is superficially attractive, but it cannot conclusively determine the remand question, since Judge Ripley did not make an express finding as to the issue of actual value, and did not evaluate the evidence under the clear and convincing standard now imposed on me by the Supreme Court. As to general questions of credibility, I have given deference to Judge Ripley's initial findings; they implicitly indicate he felt plaintiff's evidence was believable.

I do not consider a weighing of credibility between plaintiff and defense witnesses to be the critical factor in my decision, however. Rather, I believe the record to be deficient in that it lacks objective evidence sufficient to establish by clear and convincing evidence the fair and reasonable value of the collateral.

collateral was equal to the amount of the outstanding debt. Therefore, the presumption applies, and the value of the collateral received by UBA is equal to the amount of the outstanding debt.

It followed, as Judge Shortell concluded, that no deficiency judgment was owing.[1]

UBA has appealed contending (1) that the superior court erred in not reassigning

Plaintiff produced evidence of value through the testimony of its assistant vice president, Nancy Curtis, Anne Windrum, president of the company which bought 29 of the cars after repossession, and Gary Kincaid, a car salesman.

Curtis testified that the Kelly Blue Book was used to establish the market value of the fleet of cars; The Blue Book is a tool which is used to determine market value; it does not address fleets of cars, but treats them individually as sold under normal market conditions. At the time of trial, Curtis could not remember what the low blue book value of the 29 cars (sold for $37,400.00) was, but she testified she knew at the time of sale what it was. The Blue Books were introduced into evidence. (Exhibits N, O). The fleet of 34 cars was bought in October 1976 and repossessed in June, 1977. It had been leased for $174,000 less than a year earlier. Windrum testified the cars when initially repossessed were in good enough condition to lease out; but her company had very substantial repairs on them after repossession. The Fairbanks cars were in worse condition than those in Anchorage.

Kincaid testified it is difficult to sell a fleet of used cars. He said he had been contacted by Nancy Curtis about selling the cars and had told her he would take a few at a time, but it would take time to sell them and he didn't think he could do too good a job with them. He advised Curtis to explore other avenues of sale. She mentioned one such avenue for a figure of $50,000.00. Kincaid looked the vehicles up in the Blue Book, "just spot checked them", and $50,000 "wasn't a bad deal" for the bank rather than to sell them over a period of three to five months.

Defendant's witness Darrell Mobley, manager of defendant, qualified by Judge Ripley as an expert car appraiser, at the time of repossession and sale, testified that the $37,400.00 for 29 cars was "very low". He also testified the market for selling cars individually in Anchorage was very strong, and a more reasonable manner of sale would be to advise the public of the sale through media advertising, rather than accomplish a bulk sale.

Briefly summarized, the evidence as a whole does not establish clearly and convincingly the actual value of the 29 cars sold to

this matter to the trial judge, Judge Ripley; and (2) that Judge Shortell committed error in failing to find that the presumption that the value of the collateral was equal to the outstanding debt was rebutted.

## REBUTTAL OF THE PRESUMPTION OF EQUALITY

█ There is language in our prior opinion which suggests that the trial court must be able to find, by clear and convincing evidence, the fair and reasonable value of the collateral before the presumption that the value of the collateral is equal to the amount of the outstanding debt may be overcome. This language, however, is an over particular statement of the burden which must be borne by the non-complying creditor. An accurate statement of the creditor's duty appears in *Hoch v. Ellis*, 627 P.2d 1060, 1062: "[A] burden is placed upon [the creditor] to rebut the presumption that the fair market value of the collateral was at least equal to the amount of the outstanding debt." We held in *Hoch* that this burden must be carried by the standard of clear and convincing evidence. *Id.* at 1063. Of course, a creditor can rebut the presumption of equality by providing the exact value of the collateral where that value is less than the value of the outstanding debt. However, the presumption can also be rebutted by proof that the value of the collateral is less than the amount of the outstanding debt.

When it is proven by clear and convincing evidence that the value of the collateral is less than the debt, but the exact value of the collateral is not proven to the same standard, the court should proceed to determine the value of the collateral. The burden of proof as to this' question, in the sense of which party bears the risk of losing if the trier of fact is not persuaded, can be said to reside with the creditor under a preponderance of the evidence standard. However, burden of proof on this point will seldom, if ever, be important because before the point can be reached the evidence must have shown to a clear and convincing standard that value is less than the debt. Typically this will be shown by introduction of evidence of a specific value or of a range of values some part of which at least the court has found persuasive.[2]

█ In the present case the presumption that the value of the collateral was at least equal to the amount of the debt was effectively rebutted by clear and convincing evidence. The evidence offered by the bank indicated that the value of the collateral in dispute, some twenty-nine of the thirty-four automobiles which constitute the collateral, ranged from the price received, $37,498.22 upwards to $50,000.00. Dischner offered an expert witness, Mobley, whose testimony was, as summarized by Dischner's brief, "that UBA could have and should have received blue book value ($88,-665) ... for the twenty-nine cars." Mobley testified that the prices he utilized were retail, rather than wholesale prices.[3] The

Payless Rent-a-Car. This major failure of proof requires a finding that the fair and reasonable value of the collateral has not been shown. Therefore, the presumption that the actual value of the collateral is equal to the amount of the outstanding debt remains unrebutted and plaintiff cannot be awarded a deficiency judgment based on the difference between the value of the collateral and the outstanding debt.

2. It is theoretically possible that the court might find that two values, both of which are lower than the debt, clearly establish that value is lower than the debt, but that the evidence is equally balanced as between which of the two values is correct. In such case it would hardly be just for the court to conclude that the creditor should lose; we would expect the court to

chose the higher figure in preference to an award of no deficiency judgment at all. Only if there were no evidence credibly pointing to any specific value would it be appropriate to say that while value is clearly less than the debt, the creditor is entitled to no deficiency because it had not proven how much less.

3. Mobley also gave wholesale prices for some of the vehicles in dispute. They are roughly 75% of the retail prices. There is authority that wholesale market prices are most appropriate in automobile repossession by creditors who are not automobile retailers. *See Tauber v. Johnson*, 8 Ill.App.3d 789, 291 N.E.2d 180 (1972); *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (1982); *Savoy v. Beneficial Consumer Discount Co.*, 468 A.2d 465 (Pa.1983).

amount of the balance due on the debt at the time of trial was $147,809.27. No one testified that the total value of the collateral equalled or exceeded this amount.[4]

■ Based on the evidence, it can be stated with confidence that the value of the collateral was less than the outstanding balance due. That is sufficient to rebut the presumption of equality.[5] Fixing the precise value of the collateral is a task which remains to be performed by the trial court based on the evidence which has been presented.

## ASSIGNMENT TO JUDGE SHORTELL

■ Because this case must be remanded for a determination of the value of the collateral, we do not need to decide whether the assignment of the case to Judge Shortell on remand was reversible error. We agree with UBA's contention, however, that absent compelling circumstances a case should normally be assigned on remand to the same judge who conducted the original trial.

■ Alaska Rule of Civil Procedure 63(c)[6] allows the presiding judge to assign another judge to perform any duties remaining after a verdict is returned or findings of fact and conclusions of law have been filed, if the trial judge becomes disabled. We think Rule 63(c) implies that unless the trial judge becomes disabled, he should be the person who makes all fact based rulings concerning the case that he has tried. Cases in other jurisdictions construing their equivalent to Rule 63(c) support this interpretation. *Walton v. Southern Pacific Co.,* 53 F.2d 63 (9th Cir.1931); *Sunshine v. Sunshine,* 30 Colo.App. 67, 488 P.2d 1131, 1133 (1971). *See generally,* Annot. 22 A.L.R.3d 922 (1968).

The determination of the value of the collateral repossessed by UBA will require the comparison and weighing of conflicting evidence. Accordingly, we think that Judge Ripley, who had the opportunity to observe all the witnesses during the original trial, is in the best position to make that determination. We therefore REMAND this case to Judge Ripley for that purpose.

---

4. The proceeds received from the collateral not in dispute and from the bank's act of leasing some of the collateral amounted to $20,150.00 which, when added to the highest value testified to with respect to the 29 cars in dispute, $88,-665.00 falls nearly $29,000.00 short of the outstanding debt.

5. All of the evidence regardless of which party has introduced it should be considered in determining whether a presumption has been rebutted. *See Martin v. City of Fairbanks,* 456 P.2d 462, 464 (Alaska 1969) (following denial of motion for acquittal after prosecution rests, defendant may test denial by resting without offering evidence. If he offers evidence "he risks curing any defects which may have existed....").

6. Alaska R.Civ.P. 63(c), which is based on Fed. R.Civ.Pro. 63(c) provides:

If by reason of death, sickness or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge of the court, assigned by the presiding judge of the judicial district where the action has been tried or by the chief justice of the supreme court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.